UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES ex rel. RUSSELL K. HILL,

                              Plaintiff,

                                                                        5:17-CV-00684
v.
                                                                        (LEK/TWD)
SEALED DEFENDANT ONE, SEALED
DEFENDANT 2, SEALED DEFENDANT THREE,

                              Defendants.
_____

APPEARANCES:

RUSSELL K. HILL
Plaintiff pro se
#L3506
CMCF
Area 1-A
P.O. Box 88550
Pearl, MS 39228-8550


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                    <u>**ORDER AND REPORT-RECOMMENDATION**</u>

        The Clerk has forwarded for review by this Court the complaint in this *qui tam* action

brought by *pro se* Plaintiff Russell K. Hill, pursuant to the False Claims Act ("FCA"), 31 U.S.C.

§§ 3729, et seq., against Sealed Defendant 1, Sealed Defendant 2, and Sealed Defendant 3.  (Dkt.

No. 1).  Plaintiff has also filed an application for leave to proceed *in forma pauperis* ("IFP

Application") (Dkt. No. 2) and a completed Inmate Financial Authorization form. (Dkt. No. 3.)

**I.        IFP APPLICATION**

        A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  The Court further

finds that Plaintiff has filed the required Inmate Authorization Form.  (Dkt. No. 3.)  Therefore,

Plaintiff's IFP Application (Dkt. No. 2) is granted.

## II.     ANALYSIS

### A.     Legal Standard for Initial Review of Complaint

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.      The False Claims Act

The FCA provides for liability when any person knowingly presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a) and (b).  Under 31 U.S.C. § 3730(b), a private individual, known as a relator, "may bring a civil action for a violation of section 3729 for the person and for the United States Government . . . in the name of the Government."  31 U.S.C. § 3730(b)(1).  "[A]lthough *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action."  *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990); *see also United States ex rel. Kreindler & Kreindler v. United Technologies Corp*., 985 F.2d 1148, 1154 (2d Cir. 1993) (*qui tam* action under the FCA is brought "on behalf of the government" while the "government remains the real party in interest.").  "The *qui tam* relator acts in a representative capacity and not on its own behalf."  *Papdopoulos v. U.S. Government*, No. 15 Civ. 2836

3

(BMC), 2015 WL 3605405, at * 5 (E.D.N.Y. June 8, 2015).

In *United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 90 (2d Cir. 2008), the Second Circuit held that because FCA *qui tam* actions are not personal to the relators, relators are statutorily barred from bringing such actions *pro se*. The Second Circuit explained that the circumstances under which a litigant may appear without counsel are limited by 28 U.S.C. § 1654, which provides that in federal court, "parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." "[A]n individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause.'" *Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002) (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir., 1998)).

The Court explained in *Mergent* that in an FCA *qui tam* action the injury and the right to bring the claim and the claim itself belong to the United States. *Mergent*, 540 F.3d at 93. Since the Government remains the real party in interest in *qui tam* cases, it is not the relator's "own case" as required by 28 U.S.C. § 1654, nor is it one in which the relator has an "interest personal to him." *Id.* (quoting *Iannaccone*, 142 F.3d at 558). "Because relators lack a personal interest in False Claims Act *qui tam* actions . . . they are not entitled to proceed *pro se." Id*.

Based upon the foregoing, the Court finds that Plaintiff is barred from proceeding *pro se* in this FCA *qui tam* action and recommends that the complaint be dismissed upon initial review. *See Deutsche Bank National Trust v. Holyfield*, 309 F. App'x 331 (2d Cir. 2009) (affirming *sua sponte* dismissal of FCA *qui tam* action because plaintiff was appearing *pro se*); *United States. ex rel. Pantoja v. Citigroup, Inc*., No. 12-CV-4964 (JG), 2013 WL 444030, at * 2 (E.D.N.Y. Feb. 5, 2013) (dismissing FCA *qui tam* action brought by *pro se* plaintiff on initial review under 28

U.S.C. § 1915(e)).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) be **GRANTED**; and it is hereby

**RECOMMENDED** that the complaint (Dkt. No. 1) be **DISMISSED** on initial review conducted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) on the grounds that Plaintiff is statutorily barred under 28 U.S.C. § 1654 from bringing a FCA *qui tam* action *pro se*; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), parties have fourteen days within which to file written objections to the foregoing report.[1]  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   July 7, 2017
            Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[1]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

2015 WL 3605405
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Gregory PAPADOPOULOS, Plaintiff,

v.

The U.S. GOVERNMENT (FBI, Sdny, Edny, U.S.
Attorney for the Sdny and U.S. Trustees); Ian Gazes;
Alfonso Fanjul; Jose Fanjul; Ray Zemon; The Town
of Palm Beach; Michael Mukasey; Ista Management;
Judge Presca; Judge Failla; Judge Ramos; Judge
Grossman; Judge Irizarry; The State of New York;
and The State and City of New York, Defendants.

No. 15 Civ. 2836(BMC).
|
Signed June 8, 2015.

**Attorneys and Law Firms**

Gregory Padadopoulos, Astoria, NY, pro se.

### *MEMORANDUM AND ORDER*

COGAN, District Judge.

**\*1** Plaintiff *pro se,* who paid the requisite filing fee for
this action, is suing defendants under numerous federal
statutes. His submission consists of three documents: (1)
a complaint; (2) a "Memorandum of Law and Discussion
in Support of the Complaint;" and (3) a "Suplamental [*sic*
] Qui Tam complaint." For the reasons discussed below,
the complaint is dismissed as frivolous, and plaintiff is
directed to show cause why he should not be barred
from filing future frivolous complaints related to these
allegations without leave of the Court.

### BACKGROUND

**I. The Complaint**
The Complaint purports to assert jurisdiction under
the Racketeer Influenced and Corrupt Organizations
Act ("RICO"), the Federal Tort Claims Act ("FTCA"),
42 U.S.C. §§ 1981–89, *Bivens v. Six Unknown Named
Agents of Federal Bureau of Narcotics,* 403 U.S. 388,

91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), "Antitrust,"
and "Civil Conspiracy." However, not a single one
of these claims is alleged with particularity. Plaintiff
asserts that the "Fanjul Organized Crime Family" has
conspired with the Federal Bureau of Investigation
("FBI") in a variety of nefarious misdeeds, including
the destruction of plaintiff's financial firm, Revcon;
the assassinations of President John F. Kennedy and
Robert Kennedy; "entrapp[ing] President Clinton with
Monica Lewinski hoping to impeach the President";
fixing the 2000 presidential election; "destroy[ing] the
lives of some 300 Palm Beach residents [who] ... ended
up in, divorce, bankruptcy and some in suicide"; and
causing the downfall of "Madoff" (presumably Bernard
Madoff), MF Global, Lehman Brothers, and other
financial institutions. Plaintiff alleges that the Town of
Palm Beach and its police department harassed him
and other residents, as "RICO enterprises promoting the
interest of the Fanjul Organized Crime Family."

Plaintiff further alleges that "there is a tangible pattern
of some 60 federal and state cases that I was involved
being assigned to judges formerly in criminal justice and
friends of high level FBI officials or Judges from the
Caribbean that the Fanjul Brothers could secretively bribe
offshore" [*sic* ]. As a result, he alleges that multiple cases
have been decided against him, including bankruptcy
filings, creditor cases, and civil rights actions in the United
States District Court for the Southern District of New
York. Plaintiff alleges that the assigned judges are "biased
or corrupt" and selected "for the benefit of the FBI and
the Fanjul Crime Family." He asserts that his prior filings
in this district assigned to the Honorable Dora L. Irizarry
were also the result of "prejudicial judicial assignments"
because Judge Irizarry was a former prosecutor and
criminal court judge and a "native of Puerto Rico."
"Naturally all [of plaintiff's] cases were dismissed as
frivolous." In filing the instant case, plaintiff asserts:
"The unknown Judge that this case might be assigned,
with prior connections to the DOJ, Criminal Justice,
Enforcement or the Caribbean is also preemptively named
as a Defendant."

**\*2** The Complaint further alleges that the State and
City of New York "have clearly rigged their courts for
the benefit of the FBI and the Fanjul Crime Family and
the Town of Palm Beach." According to the Complaint,
plaintiff's Family Court actions were improperly decided
because his ex-wife was awarded custody of his son and

2015 WL 3605405

given "150% of a $15 million marital estate." Plaintiff states that his state court cases against the FBI and other entities and individuals were "instantly dismissed," including his claims of "vicious injuries inflicted by NYPD during an arrest," whereas he was found liable in cases brought by his creditors and was prosecuted on criminal charges. His efforts to have records at a mental institution sealed in another case were denied. In a criminal case brought against plaintiff in state court, he alleges that one of the presiding judges ordered his incarceration and detention in a psychiatric center. "Two months after closure of this case Judge Amaker purchased a $1 million mansion ... putting down a hefty $500,000 which she could not possibly have saved being a 9 year Bronx Assistant DA."

Plaintiff seeks damages against New York City and New York State "for arresting me, prosecuting me, imprisoning me, detaining me in a mental institution, inflicting cruel and unusual punishment and even shoving syringes in me ... all because I was exercising my constitutional right to free speech." He states that the statute under which he was arrested, Aggravated Harassment in the Second Degree, was later rendered unconstitutional. The complaint does not include details, including the date or location, of any specific incident.

Plaintiff asserts that he was forced to live near former United States Attorney General Michael Mukasey, and that this proximity allowed "FBI agents and Fanjul thugs working together, with Mukasey's and ISTA [Management]'s permission and cooperation ... [to] easily come to my floor, enter my apartment and inflict injuries." He alleges that he was drugged, causing him to injure his femur; that his apartment "was infested with mosquitoes carrying an antibiotic resistant virus" that left numerous scars; and that Mukasey threw a party at which "someone closely resembling Judge Preska" attended. That individual pointed towards plaintiff's apartment.

Plaintiff seeks to recover $5 billion, "which is what my net worth would have reasonably been today had defendants not conspired to deprive me of my constitutional rights." It seeks an additional "trembled [sic ] damages of $10 billion pursuant to RICO," "[u]nspecified damages," punitive damages, interest, costs, and "reasonable attorney fees." Plaintiff also seeks "to vacate every decision rendered by any Judge named as a defendant in this conspiracy." Finally, he requests

injunctions, one seeking the removal of named and unnamed judges from his cases, and another "restraining the FBI and the Fanjul Borthers from directly or indirectly interfering in my life."

## II. "Memorandum of Law and Discussion in Support of the Complaint"

**\*3** The second document plaintiff submitted states, "This Memorandum of Law and discussion are offered for the purpose of preventing errors by the Court in dismissing [ ] this case as frivolous." It describes plaintiff's court cases in West Palm Beach, the S.D.N.Y., and the E.D.N.Y., as well as the allegedly corrupt and biased judges who presided over his cases. It also mentions his arrest, prosecution, and detention, but does not provide any details. Plaintiff acknowledges potential concerns about *res judicata* and judicial immunity, but asserts that "Antitrust and Civil Conspiracy" and "RICO claims for the period 2011–2015 remain entirely un-adjudicated and cannot be dismissed as res judicata."

As a basis for federal jurisdiction, plaintiff asserts the FTCA, RICO, and "Antitrust" law, based on his claims that "the FBI/FCF badmouthed my son in every private school" near Palm Beach, destroyed his finance firm, forced him to live next door to Michael Mukasey, and prevented him from hiring a civil rights attorney and CPA. The Memorandum also raises "Qui Tam Claims" and asserts that "a judge can not dismiss Qui Tam Claims for 60 days to enable notified interested Government parties to take over the case or join ."

The Memorandum includes three exhibits: (1) a Federal Claim form alleging, "Life Systematically Destroyed by the FBI for profit;" (2) a New York City Notice of Claim form; and (3) an email from Phyllis Ann Good, describing her own claims against the Fanjuls.

## III. "Suplamental [*sic* ] Qui Tam Complaint"

In the third document, plaintiff purports to bring a *qui tam* action pursuant to 31 U.S.C. §§ 3729–3733, which plaintiff describes as the "Whistleblowers Act." In it, plaintiff asserts that the "Whistleblowers Act" permits him to bring this action on behalf of the United States, that the complaint must be filed under seal for 60 days, and that it cannot be *sua sponte* dismissed during that time period. Plaintiff states that he seeks to recover funds "on behalf of the bankruptcy estates of Lehman, MF Global, Refco,

Madoff Securities, Papadopoulos, the U.S. Trustees and SIPC." He seeks recovery of "an estimated amount in excess of $40+ billion."

The document repeats the allegations about the Fanjul brothers' past crimes and corruption and their conspiracy with the FBI. It also includes new material about "Plaintiff's personal experiences," "the Madoff incident," and other failed financial institutions alleged to have been brought down by "FBI/FCF."

**IV. Prior Litigation:**
Plaintiff is a prolific filer of lawsuits—"filing or defending" approximately 60, by his own estimation. In addition to the multiple cases he describes in the Florida and New York courts, he has filed at least 13 civil actions in the S.D.N.Y., and 3 prior actions in this district. [1] By Order dated February 8, 2011, plaintiff was barred from filing further actions in the S.D.N.Y. without prior permission from the court. *Papadopoulos v. Mineeva, et al.,* No. 10 Civ. 4882, slip op. (S.D.N.Y. Feb.8, 2011). Although that case was filed *in forma pauperis,* the filing injunction neither relied on 28 U.S.C. § 1915(e) nor limited the ban to cases seeking IFP status.

 **\*4** Plaintiff filed three prior cases in this district. In *Papadopoulos v. Amaker, et al.,* No. 12 Civ. 3608(DLI), he sued the judge presiding over his 2011 state court criminal prosecution (and other defendants) regarding the proceeding and his detention in the Manhattan Psychiatric Center. It also included references to his Family Court proceedings and the alleged conspiracies involving the FBI and "Palm Beach Mafia" that are the subject of the instant complaint. Judge Irizarry granted defendants' motions to dismiss and warned plaintiff that the future filing of non-meritorious complaints could result in the issuance of a filing injunction.

While that case was pending, plaintiff filed two additional actions, *Papadopoulos v. Obama, et al.,* No. 13 Civ. 0810(DLI), and *Papadopoulos v. Fanjul, et al.,* No. 13 Civ. 2456(DLI). Judge Irizarry found that these cases advanced "frivolous and fantastic allegations of the purported conspiracy between the Palm Beach Mafia and various members and branches of government." *Papadopoulos v. Amaker, et al.,* No. 12 Civ. 3608, 2013 WL 3226757, at \*5 (E.D.N.Y. Jun. 25, 2013). Thus, she dismissed both cases *sua sponte* and warned plaintiff that further frivolous

litigation could result in issuance of a filing injunction. *See , e .g., Papadopoulos v. Fanjul,* No. 13 Civ. 2456, 2013 WL 3149455, at \*2 (E.D.N.Y. Jun.19, 2013).

# DISCUSSION

**I. Dismissal of the Complaint**
The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Moreover, at the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 194950, 173 L.Ed.2d 868 2009). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007). Although "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft,* 556 U.S. at 678, 129 S.Ct. at 1949 (internal quotation marks and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965.

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte,* if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000); Fed.R.Civ.P. 12(h)(3). An action is "frivolous" when either: (1) "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy"; or (2) "the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotation marks and citation omitted). "[A] finding of factual frivolousness is appropriate when the

facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). "A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'-that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " *Gallop v. Cheney,* 642 F.3d 364, 368 (2d Cir.2011) (quoting *Denton,* 504 U.S. at 32–33, 112 S.Ct. at 1733).

**\*5** In this case, plaintiff's submissions allege a vast conspiracy between a few Florida individuals and various government officials at all levels in events ranging from the assassination of President Kennedy, to the collapse of global financial entities, to the manipulation of plaintiff's divorce and bankruptcy cases, to the interference with plaintiff's ability to find an apartment or hire a CPA or attorney. These allegations "rise to the level of the irrational or the wholly incredible." *Denton,* 504 U.S. at 33, 112 S.Ct. at 1733. Plaintiff's three prior cases in this district alleged similar fantastic claims and were dismissed. Since the instant complaint is devoid of any basis in law or fact, this action is also dismissed as frivolous without leave to amend, as any such amendment would be futile. *See Cuoco,* 222 F.3d at 112.

## II. No Basis for *Qui Tam* Action

Plaintiff also purports to bring his claims as a *qui tam* complaint pursuant to the "Whistleblowers Act." The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* provides for liability when any person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The *qui tam* provisions of the FCA allow a private individual, known as a relator, to "bring a civil action for a violation of section 3729 for the person and for the United States Government ... in the name of the Government." 31 U.S.C. § 3730(b)(1). "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). During this 60–day period, the United States may elect to intervene in the action or allow the relator to proceed on behalf of the United States, or move to dismiss the action. 31 U.S.C. §§ 3730(b) (4) and (c)(2)(A).

A *qui tam* action under the FCA is brought "on behalf of and in the name of the government" while the "government remains the real party in interest." *U.S. ex rel Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1154 (2d Cir.1993). The *qui tam* relator acts in a representative capacity and not on his own behalf. *Pro se* litigants can only act on their own behalf and not for the benefit of any other party or interest. *See Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998). Accordingly, a *qui tam* relator cannot proceed *pro se. See United States ex rel. Mergent Servs. v. Flaherty,* 540 F.3d 89, 93 (2d Cir.2008).

Plaintiff argues that his proposed *qui tam* suit cannot be *sua sponte* dismissed until 60 days have elapsed and the United States government has decided whether to intervene. He is mistaken. One provision of the FCA provides that an action brought under the FCA "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). However, Rule 12(h)(3) of the Federal Rules of Civil Procedure establishes the general rule: "Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added). In this case, plaintiff cannot proceed *pro se* under the FCA; thus the Court lacks jurisdiction over his claims. *See U.S. ex rel. Rafael Manuel Pantoja v. Citigroup, Inc., et al.,* No. 12 Civ. 4964, 2013 WL 444030 (E.D.N.Y. Feb.5, 2013) (dismissing action *sua sponte* because *pro se* plaintiff cannot proceed as a relator in a *qui tam* case); *see also Ananiev v. Freitas,* 37 F.Supp.3d 297, 307 (D.D.C.2014) (dismissing *sua sponte* where "[t]he plaintiff's FCA claims ... fail to state a claim upon which relief may be granted because he is impermissibly attempting to proceed *ex relatione* without counsel.").

**\*6** Plaintiff *pro se* may not proceed as a relator in a *qui tam* action. Therefore, because the Court lacks subject matter jurisdiction in this case, plaintiff's proposed claims under the FCA are dismissed *sua sponte.*

## III. Proposed Filing Injunction

The federal courts have limited resources. Frequent frivolous filings work to diminish the ability of the courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary

burden on the courts and their supporting personnel." *Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (internal quotation marks omitted). "If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) (internal quotations and citations omitted). "The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998).

Plaintiff is already on notice. He is already barred from filing future actions in the United States District Court for the Southern District of New York without prior permission. *Papadopoulos v. Mineeva,* 10 Civ. 4882, slip op. (S.D.N.Y. Feb. 8, 2011). In this district, he has thrice been warned that further filing of non-meritorious complaints may result in limitations on his ability to file future complaints. The instant complaint raises the same fantastic allegations that were previously asserted and dismissed in prior cases in this district and in the S.D.N.Y. The Court finds that plaintiff's frequent frivolous filings detract from the legitimate cases before it. Accordingly, plaintiff is directed to show cause, by written affirmation, within 20 days of the date of this Memorandum and Order, why the Court should not bar the acceptance for filing of any future frivolous complaints related to these allegations without leave of the Court. If plaintiff fails to show cause within the time allotted, he shall be barred from filing any future frivolous complaints related to these allegations without leave of the Court.

### CONCLUSION

For the reasons set forth above, this action is dismissed as frivolous. Plaintiff is directed to show cause by written affirmation, within 20 days of the date of this Memorandum and Order, why he should not be barred from filing future frivolous complaints related to these allegations without leave of the Court. Although plaintiff paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962).

**\*7 SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3605405

### Footnotes

1    His S.D.N.Y. cases include Fair Credit Reporting Act claims, *Papadopoulos v. Tenet Good Samaritan Inc.,* 08 Civ. 989(DLC) (bill collection action removed by Papadopoulos to federal court, where it was dismissed for lack of personal jurisdiction), bankruptcy appeals, *In Re: Gregory Papadopoulos, et al.,* No. 14 Civ. 3713(KPF); *In Re: Gregory Papadopoulos,* No. 14 mc 148(ER); *In Re: Gregory Papadopoulos;* No. 14 Civ. 4750(ER); *In Re: Gregory Papadopoulos,* No. 15 Civ. 1642(PGG), Social Security cases, *Papadopoulos v. Comm'r of Soc. Sec.,* No. 10 Civ. 7980(RWS); *Papadopoulos v. Astrue,* No. 13 Civ. 3163(RWS), and civil rights actions, *Papadopoulos v. United States Gov't, et al.,* No. 08 Civ. 11256(RMB), 2010 WL 3155037 (Aug. 9, 2010) (granting defendants' motions to dismiss plaintiff's civil rights claims against the Palm Beach Police and the FBI); *Papadopoulos v. Mineeva, et al.,* No. 10 Civ. 4882, slip op. (S.D.N.Y. Feb.8, 2011) (barring plaintiff from filing further actions in the court without prior permission and noting June 23, 2010 Order dismissing the case as frivolous and duplicative); *Papadopoulos v. City of New York, et al.,* No. 10 Civ. 9454(GBD) (dismissed in light of the February 8, 2011 filing injunction); *Papadopoulos v. Obama, et al.,* No. 12 Civ. 8736(LAP) (same); and *Papadopoulos v. The Clerk of the Court for the SDNY,* No. 13 Civ. 724(LAP) (request for leave to file dismissed as meritless). In addition to the publicly available cases, plaintiff makes a reference to "*Papadopoulos v. Gazes* et al 13–1506 for similar claims prior to 2013." That case is filed under seal.

2013 WL 444030

2013 WL 444030
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

UNITED STATES of America ex rel.
Rafael Manuel PANTOJA, Plaintiff,
v.
CITIGROUP, INC., Citibank, N.A.,
and CitiMortgage, Inc., Defendants.

No. 12–CV–4964 (JG).
|
Feb. 5, 2013.

**Attorneys and Law Firms**

Rafael M. Pantoja, Brooklyn, NY, pro se.

*ORDER*

JOHN GLEESON, District Judge.

**\*1** On September 23, 2012, *pro se* plaintiff Rafael Manuel Pantoja filed a complaint alleging fraud against Citigroup, Inc. and two of its subsidiaries, ostensibly on behalf of the United States, under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). His request to proceed *in forma pauperis* is granted. Because Pantoja cannot proceed *pro se* as a relator in a *qui tam* case, the complaint is dismissed.

**BACKGROUND**

Pantoja alleges that between a period in 2001 and December 31, 2011, Citigroup, Inc., Citibank, N.A., and CitiMortgage, Inc. ("Citigroup") participated in various programs funded by the United States government (compl. ¶ 7) and committed unlawful acts in the origination of "8 subject mortgage loans" with its affiliated entity—ABN Amro Mortgage Group ("AAMG"). Specifically, Pantoja alleges, *inter alia*, that "[t]he Bank made false, misleading or fraudulent representations (or was involved in a scheme to defraud consisting solely of such a false, misleading or fraudulent representation) to the unqualified borrowers

in connection with the defendant Citigroup's or its affiliated entity's making of the 8 residential mortgage loans to such unqualified borrowers" and knowingly failed to comply with Freddie Mac requirements. Compl. ¶ 9(A), (D). Further, "the Bank" made a series of false statements, certifications, representations, and claims to the Federal Housing Administration and other federal agencies, requesting and receiving payments from the government. Compl. ¶¶ 10, 12–15.

Pantoja alleges that Citigroup's actions caused him to be prosecuted, convicted, [1] and subject to restitution claims in the amount of $1,338,902 in connection with unspecified crimes related to the "8 subject mortgage loans." Compl. ¶¶ 16–19, 22. Pantoja does not claim that he is suing on behalf of the federal government, nor does he demand recovery for the government pursuant to the False Claims Act. He requests that judgment be entered in his favor and against the defendant Bank in the total amount of $9 million.

**DISCUSSION**

*A. Standard of Review*

In reviewing the complaint, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted); *see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

However, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). Moreover, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999).

Case 5:17-cv-00684-LEK-TWD   Document 5   Filed 07/07/17   Page 12 of 12
U.S. ex rel. Pantoja v. Citigroup, Inc., Not Reported in F.Supp.2d (2013)

2013 WL 444030

### B. The False Claims Act

**\*2** The FCA provides for liability when any person knowingly presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval. 31 U.S.C. §§ 3729(a)(1)(A); (b)(2)(A)(i). Pursuant to 31 U.S.C. § 3730(b), a private individual, known as a relator, "may bring a civil action for a violation of section 3729 for the person and for the United States Government ... in the name of the Government." 31 U.S.C. § 3730(b)(1). "[A]lthough *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action." *Minotti v. Lensink,* 895 F.2d 100, 104 (2d Cir.1990). The *qui tam* relator stands in the shoes of the government; he is not acting on his own behalf.

The circumstances under which civil litigants may appear without counsel are limited by statute. Specifically, 28 U.S.C. § 1654 provides that in federal court, "parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Because the statute permits parties only to "plead and conduct their own cases personally," *id.,* "an individual who is not licensed as an attorney 'may not appear on another person's behalf in the others cause." *Machadio v. Apfel,* 276 F.3d 103, 106 (2d Cir.2002) (quoting *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998)). That is, in order to proceed *pro se,* "[a] person must be litigating an interest personal to him." *Iannaccone,* 142 F.3d at 558 (citing *Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir.1997)).

While the FCA permits relators to control the FCA litigation, the claim itself belongs to the United States. *See Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 774–75, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *cf.* 31 U.S.C. § 3730(c)(5) (providing that as an alternative to bringing a civil suit, "the Government may elect to pursue its *claim* through any alternate remedy available to the Government") (emphasis added). "Accordingly, as the United States remains the real party in interest in *qui tam* actions ... the case, albeit controlled and litigated by the relator, is not the relator's own case as required by 28 U.S.C. § 1654, nor one in which he has an interest personal to him." *U.S. ex rel. Mergent Services v. Flaherty,* 540 F.3d 89, 93 (2d Cir.2008) (internal citations omitted). Because relators lack a personal interest in FCA *qui tam* actions, Pantoja is not entitled to proceed *pro se.*

Accordingly, Pantoja's complaint is dismissed in its entirety.

### CONCLUSION

For the reasons stated above, the complaint is dismissed. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this order would not be taken in good faith, and therefore in forma pauperis status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*3** So ordered.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 444030

---

Footnotes

1   Pantoja had a criminal case pending in this Court, *United States v. Pantoja,* No. 08–cr–212 (BMC), in which he pled guilty on February 17, 2010 and was sentenced on October 15, 2012.

---